# FEDERICO DIDRICKSEN ET AL.

### v.

# AMERICAN RAILROAD COMPANY OF PORTO RICO.

---

Ponce, Law, No. 242.

1. The national employers' liability acts, both that of June 11, 1906 (34

---

NOTE.—As to duty and liability under Federal and state railway safety-appliance acts, see note to Chicago, Milwaukee, M. & St. P. R. Co. v. United States, 20 L.R.A. (N.S.) 473.

Didricksen v. American R. Co.

Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1909, p. 1148),
and that of April 22, 1908 (35 Stat. at L. 65, chap. 149, U. S. Comp.
Stat. Supp. 1909, p. 1171), are constitutional as to and are in force in
Porto Rico, the first being superseded only as to common carriers by
railroad by the second.   Ramirez v. Ponce R. & Light Co. ante, 353,
followed.

2. Notwithstanding that each of said acts of Congress provides that the
liability shall be "to his or her personal representative," this does
not necessarily mean that both of the parents of a deceased em-
ployee, who have been designated jointly by a court of competent
jurisdiction as the personal representatives of the deceased, may not
sue as plaintiffs.

3. The provisions of the national safety appliances act of March 2, 1893
(27 Stat. at L. 531, chap. 196), as amended by the act of April 1,
1896 (29 Stat. at L. 85, chap. 87, U. S. Comp. Stat. 1901, p. 3175),
have been extended to common carriers by railroad in the territories,
which includes Porto Rico, by the act of Congress of March 2, 1903
(32 Stat. at L. 943, chap. 976, U. S. Comp. Stat. Supp. 1909, p.
1143), and is in full force and effect in said district.

4. In a suit by the parents of a deceased employee, under the national
employers' liability act of April 22, 1908, for the death of their son,
occurring through the negligence of the defendant railroad company,
a verdict of $6,000 is not so excessive as to authorize the court to
interfere with the action of the jury to set the same aside, where there
is nothing to show that it was brought about by mistake, passion,
or prejudice.

5. On a motion for a new trial, the affidavits of individual jurors attack-
ing their own verdict will ordinarily not be received for any purpose,
but, even if they could be received, the party intending to use them
must show that it was prejudiced by the alleged facts set forth
therein.

6. *Quære*, and not decided:   Whether self-serving declarations, made by
an injured man twelve hours after his injury, are so remote as that
they ought not to be considered even in cases where it is impossible
to otherwise prove the facts surrounding the actual occurrence.

7. Under authority of the national employers' liability acts, as they are
purely compensatory, it is competent for the plaintiff to show that
the deceased was a person of good and thrifty habits, his earning
capacity, and the amount he contributed to the support of the party
for whose benefit the suit is brought; but the wage rate at the time
of the actual injury that resulted in the death is not the absolute

Didricksen v. American R. Co.

criterion by which to measure such earning capacity. Whenever plaintiff has introduced evidence to show the good and thrifty habits of deceased, it is then competent for the defendant to show the contrary.

8. It is negligence *per se* for a railroad company to pile coal in the form of a wall so close to its tracks as to make it unsafe for its employees to couple cars in front of it.

9. Under § 3 of the national employers' liability act of April 22, 1908, contributory negligence on the part of the employee does not bar recovery, but only reduces the damages in proportion to the negligence of the employee.

10. In actions under this latter employers' liability act, the employee cannot be held to be guilty of contributory negligence, or to have assumed the risks of his employment, where a violation by the employer of any of the safety appliances acts contributed to the injury.

Opinion filed March 15, 1910.

--------

Mr. *José A. Poventud,* attorney for the plaintiffs.

Mr. *F. L. Cornwell,* attorney for the defendant.

RODEY, Judge, delivered the following opinion:

Plaintiffs are the parents and personal representatives of the late Pedro Didricksen. The suit is brought under the national employers' liability act of April 22, 1908, to recover damages for alleged negligence, that resulted in the injury and death of their said son. The regular employment of the deceased was that of a yard master or yard conductor on defendant's line of railroad, but he had at different times, and for some time before the accident that resulted in his death, been engaged as conductor and brakeman of a ballast train, that was working at Lajas on

defendant's line. He was handling this train at the time of the injury. The accident occurred on the last day of November, 1908.

The case was tried at the January, 1910, term in the Ponce division before a jury. A verdict was returned for plaintiffs in the sum of $6,000. The issue before us is a motion for a new trial. It was argued orally, but no briefs were filed. We have just read a transcript of the evidence, and examined the entire record and papers. The new trial is asked for the following alleged reasons: (1) Because the verdict is against the evidence; (2) because it has no evidence to support it; (3) because it is so far contrary to the evidence as to shock the moral sense; (4) because of misconduct of the jury in taking into consideration statements made by juror C. A. Teller, which prejudiced the defendant, and which are more particularly set out in the affidavit attached to the motion, marked Exhibit A; (5) because the verdict is contrary to both the law and the facts, and (6) for errors of law occurring at the trial and duly excepted to by. the defendant.

With reference to the fourth ground above set out, counsel for defendant files an affidavit in which he states: "That he is the attorney for the American Railroad Company, and was in charge of the defense of the above-entitled action. That when said cause was submitted to the jury, and after they had brought in their verdict, that three jurors stated to deponent that one of the jurors, to wit, C. A. Teller, had stated in the jury room that the American Railroad Company had offered to settle with the plaintiffs for the sum of $15,000, and that another juror whose name deponent does not remember, but who was a school-teacher, and from Cabo Rojo, wanted to assess the damages in the sum

Didricksen v. American R. Co.

of $50,000. That the names of the jurors who stated the aforesaid to deponent are McCormick, Walsh, and Toro, and that said jurors had agreed with deponent to make an affidavit covering said facts, but that juror McCormick informed deponent that he had consulted with the judge, and that the court had advised him not to make same, and that said juror McCormick communicated said statement of the court to the other members of the jury, and for that reason deponent is unable to present their affidavits."

In answer to this, counsel for the plaintiffs files the affidavits of four jurors, two of them being jurors Teller and Toro, referred to above, and which are as follows:

"C. A. Teller, being duly sworn, makes oath according to law and deposes and says: That he was one of the jurors who tried and decided the above-entitled case in favor of plaintiffs; that said case was wholly and exclusively decided on the facts and evidence allowed by the court, and on the instructions received from the said court, without any extraneous matter, evidence, or thing whatever having in any manner interfered with, or influenced the jury; that deponent has not, and did not, state in the jury room or anywhere else, during the trial of the above case, 'that the American Railroad Company had offered to settle with the plaintiffs for the sum of $15,000, nor any other sum;' that nothing was considered by the jury in deciding the above case but the facts and evidence allowed by the court, and the law as propounded by it, and that in this case a verdict was unanimously reached very soon after the cause was submitted to the jury, by reason of the clear facts of the same; that no misconduct or irregularity of any kind occurred during the trial of this case by any of the jurors, or in their presence."

"Manuel Fournier, being duly sworn, deposes and says: That

Didricksen v. American R. Co.

he was one of the jurors who tried and decided the above-entitled cause in favor of plaintiffs; that said case was wholly and exclusively decided on the facts and evidence allowed by the court, and on the instructions received from said court, without any extraneous matter, evidence, or thing whatever having in any manner interfered with or influenced the jury; that juror Mr. C. A. Teller did not state in the jury room or anywhere else, during the trial of the above case, 'that the American Railroad Company had offered to settle with the plaintiffs for the sum of $15,000, nor for any other sum;' that juror M. Toro Peralta, a school-teacher from Cabo Rojo, did not want to assess damages in this case in any such large sum as $50,000, but wholly agreed with the verdict herein rendered; that nothing was considered by the jury in deciding the above case but the facts and evidence allowed by the court, and the law as propounded by it, and that in this case a verdict was unanimously reached very soon after the cause was submitted to the jury, by reason of the convincing and clear facts of the same; that no misconduct or irregularity of any kind occurred during the trial of this cause by any of the jurors, or in their presence by anyone else."

"Manuel A. Toro, being duly sworn, deposes and says: That he was one of the jurors who tried and decided the above-entitled cause in favor of plaintiffs; that said case was wholly and exclusively decided on the facts and evidence allowed by the court, and on the instructions received from said court, without any extraneous matter, evidence, or thing whatever having in any manner interfered with or influenced the jury; that juror Mr. C. A. Teller did not state in the jury room or anywhere else, during the trial of the above case, 'that the American Railroad Company had offered to settle with the plaintiffs for the sum

Didricksen v. American R. Co.

of $15,000, nor for any other sum; that juror M. Toro Peralta, a school-teacher from Cabo Rojo, did not want to assess damages in this case in any such large sum as $50,000, but wholly agreed with the verdict herein rendered, that nothing was considered by the jury in deciding the above case but the facts and evidence allowed by the court, and the law as propounded by it, and that in this case a verdict was unanimously reached very soon after the cause was submitted to the jury, by reason of the convincing and clear facts of the same; that no misconduct or irregularity of any kind occurred during the trial of this cause by any of the jurors, or in their presence by any one else; that he never stated to Mr. F. L. Cornwell, the matters and things set out in defendant's counsel's affidavit, marked Exhibit A, which deponent has read, nor did he agree with said F. L. Cornwell nor with anybody else, to make any affidavit relative to their deliberations and proceedings.

The court itself desires here to state that, according to its recollection, jurors McCormick and Walsh did each call on the court next morning, after the verdict was returned, and state that counsel for defendant had asked them to make an affidavit regarding occurrences in and about the trial, and wanted to know of the court if there would be anything wrong about their doing so. Our recollection is that we told each of them, that, as we remembered the rule, jurors were not ordinarily permitted to attack their own verdict by affidavit, or in any other manner, but that if anything extraordinary or unusual had occurred it might even be their duty to not only make affidavit about it for counsel, but to report the matter to the court. One of them, Mr. Walsh, was apparently proceeding to say that there was nothing as serious as that about it, when the court, being about to

V. Porto Rico—28.

go on the bench, told them they had better do nothing about it until we had opportunity to look the matter up, and that we would advise them further. They did not again return to the chambers, and, as the court remained on the bench during the day, they returned to their homes without further consultation with the court. It is therefore probable that counsel is unable to present the affidavits of said jurors for such reason. However, after the affidavit of counsel first aforesaid was put in the files, the affidavits of the jurors, as above set out, were evidently procured by counsel for plaintiffs, and speak for themselves. If such affidavits can be received at all to attack a verdict it would seem that the matters set forth in counsel's affidavit have been fully denied as above.

Under the heading of "New Trial," in 29 Cyc. Law & Proc. at pp. 982, 983, it is set forth that "it is a general rule, in most jurisdictions, that the testimony of jurors is not competent to impeach their verdict." Citations are given from twenty-four states of the Union, as well as from several of the Federal courts, as sustaining this doctrine. In Chicago Sanitary Dist. v. Cullerton, 147 Ill. 385, 35 N. E. 723, it is stated that "the grounds stated for the rejection of such affidavits have usually been, first, because they would tend to defeat the solemn act of the juror under oath; second, because thir admission would open the door to tamper with jurymen, after their discharge; third, it would furnish to dissatisfied and corrupt jurors the means of destroying the verdict to which they had assented." It is also stated in the same paragraph of Cyc. Law & Proc. that in some jurisdictions by statute such testimony is not competent for the purpose of impeachment, and is only received to show that the verdict was agreed to or induced by a resort to chance. But it

Didricksen v. American R. Co.

is also set forth in a note on page 989 of that same work that "affidavits of jurors are generally inadmissible to prove declarations of other jurors in the jury room indicating prejudice, bias, or prejudgment of the case," citing Cowles v. Chicago, R. I. & P. R. Co. 32 Iowa, 515, and several other cases.

So it seems the rule is rather general that such affidavits cannot be received for the purposes intended here, and, in any event, we gather from our reading of the authorities what seems to be the rule,—that wherever such affidavits are permitted to be received at all, it must be shown that the party complaining was probably prejudiced by the act complained of. The size of the verdict does not in our opinion tend to show that such was the fact here.

It appeared from the evidence adduced at the trial that the accident occurred on a side track that runs around behind the station at Lajas, one of the uses of which side track is to enable the help to supply coal to the locomotives used along the line each way from that point. The coal is piled up alongside of the track, its perpendicular front being constructed out of big chunks of coal that make it look like a rubble masonry wall. The evidence tended to show that this coal wall is so close to the track as not to afford safe room for a person to go between it and cars standing on the track. It also showed that deceased was coupling some cars, and that just before the accident he was standing on the opposite side of the track from this coal wall and signaled the locomotive driver to push the cars back to some other cars that were further along on the siding. The locomotive driver testified in substance that deceased signaled him to stop, and that he did stop, and waited for some minutes, but did not again see deceased; that he next suddenly saw the

station master going towards the place where deceased was, and so he, the witness, jumped off the engine, and went along also, and they both found the injured man on the opposite side of the track, near this coal wall, on the ground, and partly between the ends of the two flat cars that he had been trying to couple. It is pretty certain from the evidence that there is not room for the body of an ordinary man between the side of the car and this coal wall, but it is not so absolutely certain from all of the evidence, especially if the evidence of the witness Rodriguez next below referred to is not considered, whether deceased was injured by being caught between the drawheads or bumpers of the cars in an effort to couple the cars, or whether he had successfully accomplished that and then escaped to the outside and was caught between the side of the car and the coal wall. No person actually saw the accident occur, or, if they did, they failed to state the fact at the trial. Plaintiffs called a witness named Gustavo Rodriguez, who was an uncle of the deceased. He lived some distance from the scene of the accident down the line of railroad, and went there on the first train, getting there ten or twelve hours after the occurrence. He testified that deceased told him, as he lay on a cot at the depot at Lajas, that the way the accident occurred was that there were two cars, the couplings of which did not join, and that then he had to cross over to the opposite or inner side between the coal pile and the cars so as to turn the crank rod on that side; that then the pin fell, and the engineer, upon hearing that noise, started the train, and that then deceased was caught by the train, and was squeezed and injured. The deceased specifically stated that he was squeezed between the coal pile and the car; that there was room for him between the ends of the platform cars, but not between the coal wall and the side of the car.

Didricksen v. American R. Co.

Later in the trial, on motion of counsel for defendant, and principally under authority of Travellers' Ins. Co. v. Mosley, 8 Wall. 397, 19 L. ed. 437, we took the evidence of this uncle from the jury on the ground that it was too long after the fact, and instructed them specifically not to consider it. Now, after a full examination of the subject, and under all the facts of this case, we are not certain that we did right in taking that evidence from the jury, but if we erred in this it was in favor of defendant. It is certain that deceased was at that time injured unto death, as he died eight days later in the hospital at Ponce, and it may have been that his statement as to his feelings and as to how the injury occurred, made before he was removed from the depot near which the accident occurred, was so much a part of the *res gestæ* as that it ought to have been admitted. At any rate, it appeared impossible, otherwise than by circumstantial evidence, to prove how the occurrence took place.

Counsel for defendant strenuously contends that after we took this evidence from the jury, which he insists was proper, there was nothing left in the case to go to the jury at all, and that there ought to have been a peremptory instruction for defendant. We have examined the evidence, and are constrained to dispute this proposition as to the sufficiency of the remaining evidence. A witness called by the plaintiff, named Emilio Mendez, who was working at the station at the time, stated that he was coming from a field toward the station when the accident occurred; that when he had approached close to the track where this train was he heard a noise, and heard the bumpers of the cars strike each other and heard a scream or yell. That upon hearing the scream the engineer stopped the engine, and deceased fell in the middle of the track, and that afterwards

the station master called two or three more peons and they, with the witness, picked him up, put him on a hand car and took him to Lajas. The witness states he did not notice the way the deceased was caught, but thinks he was caught between the two bumpers and against the coal pile. He identified a photograph of the coal pile as a correct representation of the coal wall there at the time.

Another witness for plaintiff, named Julio Roman, who was working at the time for the railroad company at the station in question, and who was on the track in front of the station at the time, stated he arrived there immediately after the accident and helped to take the injured man out, or to remove him from there, and that they put him on the hand car and took him to the town. He further states that he found deceased between the ends of the two platforms of the cars near the coal pile. That his feet were touching the coal wall and his head was towards (across) the track. Then, when the defense put in its own evidence, the engineer testified as before indicated, and on the whole he appeared to want to shield himself from blame for what probably was his fault.

Another witness for defendant, Ulises Centino, was the fireman in the engine at the time, and states that the engine was on the main track, and that deceased told them to go back on the siding to get some cars that were there,—to couple some flat cars; that they went in and endeavored to couple, but that the cars did not couple, and that then deceased stepped out in sight of the engine driver and signaled to stop, and that after they stopped they remained there waiting further orders from deceased, and because they did not hear any more orders and deceased did not again appear, the engineer whistled as an

inquiry to him, and that, when he then did not answer, the engineer jumped off and saw the people pulling the deceased from between the ends of the platform cars. The station master testified that it was eight o'clock in the morning, and he was in the office and heard somebody screaming, and went out to the rear part of the station near a switch where they were making some manœuvers and saw the conductor (deceased) between the flat cars. Then he went towards the engineer and told him not to move further. That he and the engineer then got some help and started to move the man. That they found the deceased on the coal wall side of the track between the ends of the two flat cars. It was in evidence that these are small cars weighing about 4½ tons each. That there were four or five of them between the engine and the place where deceased was when the accident occurred. There was some evidence tending to show that these cars had automatic couplers, but there was plenty of evidence to show that they did not always couple, and we think the weight of the evidence shows that those cars have not such appliances in the way of automatic couplers as are provided for in the national law, and contemplated in the employers' liability act referred to.

It was in evidence that deceased earned but $40 a month, and it was also in evidence that he did not give much of it to his parents; that he was somewhat dissolute to the extent that he lived illicitly with a woman, and gave her a portion of his wages monthly.

This is one of the first cases tried in this district under this new national employers' liability act. The evidence showed that deceased was a healthy young man, somewhere between twenty-six and thirty years of age. We instructed the jury that

Didricksen v. American R. Co.

the act is intended to be compensatory entirely. On the whole we think this instruction was right, even where the father and mother are the plaintiffs. Counsel for defendant contends that $6,000 is excessive as damages. Thirty years would not be too much to claim as the probable life of the deceased, but perhaps twenty years would be as much as the parents could claim any support from him. Deceased, at $40 a month, in twenty years would earn $9,600, but we are not prepared to say that the low wage which this defendant is paying its train conductors is a proper criterion for the purposes of the measure of damages under this national law in this case. It is probable that if he had tried he might earn much more than that wage rate. For a father and mother, to whom he was contributing ten or fifteen dollars a month at times, to recover a verdict of $6,000, is not, in our opinion, so unreasonable as that we ought to set it aside. At any rate, because of the newness of the act in question, if any different rule is to obtain, we would much rather have the Supreme Court of the United States say so, than to do so ourselves. We are not prepared to go on record as saying that a verdict of $6,000, going to the father and mother, who are poor people, for the death of a son, in this sort of a case, is too much.

As to what actually fixes liability on defendant, we think it is the fact of the coal wall being there, and of the couplings not being of the character of safety appliances provided for by the national law. So, we think, deceased did not, under § 4 of the act in question, assume that risk of his employment, and hence, that the jury were justified in finding defendant liable. It must be remembered that the negligence of his fellow servant, the engineer, if the accident occurred because of that, is not,

under the act in question, any defense, as it would be at common law. The placing of the coal wall where it was was the act of defendant itself.

We are therefore constrained to deny the motion for a new trial, and that will be the order. All facilities to take the case up on writ of error will be afforded, as we feel that the case is one where it is very advisable to have the authoritative decision of the Supreme Court of the United States.